UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STRAUMANN USA, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 21-10146<br>) |
| HEATHER MACLEOD, | )<br>) |
| Defendant. | )<br>)<br>) |

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Straumann USA, LLC ("Plaintiff" or "Straumann"), for its Jury Demand and Complaint for Injunctive Relief and Damages against Defendant Heather MacLeod ("Defendant" or "MacLeod"), hereby states and alleges the following:

**INTRODUCTION**

**Parties, Jurisdiction and Venue**

1. Straumann is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 60 Minuteman Road, Andover, Massachusetts 01810.

2. MacLeod is an individual who is a citizen of Florida residing at 17031 Quail Call Drive, Tallahassee, FL 32309.

3. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs. Personal jurisdiction exists over MacLeod because she has consented, by contract, to jurisdiction in the United States District Court, District of Massachusetts.

4. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2), because a

substantial part of the harm caused to Straumann by MacLeod's conduct arises in Massachusetts, and because MacLeod consented, by contract, to jurisdiction and venue in the United States District Court, District of Massachusetts.

## FACTS

5. Straumann USA Inc. is a US subsidiary of the Straumann Group. The Straumann Group (SIX: STMN) is a global leader in tooth replacement and orthodontic solutions that restore smiles and confidence. It unites global and international brands that stand for excellence, innovation and quality in replacement, corrective and digital dentistry, including Straumann, Instradent, Neodent, Medentika, etkon, ClearCorrect, Bay Materials, Dental Wings, and other fully/partly owned companies and partners.

6. In collaboration with leading clinics, institutes and universities, the Group researches, develops, manufactures and supplies dental implants, instruments, CADCAM prosthetics, biomaterials and digital solutions for use in tooth replacement and restoration, orthodontic treatment, or to prevent tooth loss.

7. Among other products, Straumann markets and sells a compact Intraoral Scanner, called the Straumann Virtuo Vivo Intraoral Scanner, that allows dentists and clinicians to quickly and easily create digital impression data that can be used to design and produce effective dental restorations.

8. Align Technology ("Align") markets and sells orthodontic and restorative treatment solutions.

9. Align markets and sells its own Intraoral Scanner, the iTero intraoral scanner, in competition with the Straumann Virtuo Vivo Intraoral Scanner.

10. Straumann has developed strong relationships with the customers it serves and the

business partners with whom Straumann works in servicing its customers. Straumann exerts significant efforts and costs to protect its legitimate business interests and protect its relationships with customers and business partners that have been developed over years of effort.

11. In addition, Straumann has spent valuable resources identifying and developing its employee talent. For instance, Straumann spends a considerable amount of time and investment in training its employees, through its specialized training program, so that they can be successful employees within the Straumann business model. Straumann administers personal, intensive, and ongoing training to its employees through an established program, wherein employees gain knowledge of Straumann's unique techniques of customer and business partner relations, marketing and solicitation to potential customers and business partners, and cultivating and maintaining relationships with existing customers and business partners.

12. Straumann has generated a substantial amount of goodwill by building, cultivating, supporting and maintaining relationships between its employees and its customers and business partners. The goodwill is enhanced and cultivated by Straumann's marketing, training and support.

13. In addition to Straumann's substantial investment in its relationships with customers and business partners, Straumann has also developed vast amounts of confidential commercial information including, but not limited to: (1) information regarding business plans, trade secrets, existing or potential transactions with third parties, financial information, intellectual property, products, services, research and development, operations, marketing, sales, pricing, and trade know-how; (2) personnel information, such as the identity and number of Straumann's other employees, their compensation packages, skills, qualifications, work completed for Straumann, experience and abilities; and (3) non-public information regarding customers and business

partners.

14. In order to protect these valuable assets, and for good and valuable consideration, Straumann requires each of its employees to sign restrictive covenant agreements that typically include confidentiality, non-competition and non-solicitation provisions, generally upon the commencement of such employee's employment.

## Straumann's Employment of MacLeod

15. On or about May 18, 2015, MacLeod commenced employment at Straumann as Territory Manager, Dental Division – Northwest Florida.

16. As stated in MacLeod's offer letter, in consideration of her employment by Straumann, and as a prerequisite for employment, she was required to (and did in fact) execute Straumann's Agreement for Non-Disclosure of Proprietary Information, Non-Solicitation and Non-Competition (the "Agreement") attached hereto as Exhibit A.

17. Paragraph 5 of the Agreement states:

I agree that for a period of one (1) year following termination of my employment, regardless of the cause for such termination, I shall not, directly or indirectly, as an individual, proprietor, partner, stockholder, officer, employee, director, joint venture, investor, lender, consultant, independent contractor or in any other capacity do any of the following:

(a) engage in, perform services for, or have a financial interest in, any business or entity which competes, directly or indirectly, with Straumann's Business in any geographic area in the United States for which I was responsible or in which I performed services for Straumann while I was an employee at Straumann; or

(b) divert, recruit, contact, entice, induce or solicit, or attempt to divert, recruit, contact, entice, or induce or solicit any of the customers, clients, suppliers or potential customers of Straumann upon whom I called or solicited, with whom I became acquainted or with whose business I became familiar while employed by Straumann for purposes competitive, directly or indirectly with Straumann's Business.

18. The Agreement defines "client," "customer," or "account" as "any person or entity that is a client, customer or account of Straumann on the date hereof or becomes a client, customer

or account while I am employed; and any prospective client, customer or account while I am employed; and any prospective client, customer or account to whom Straumann has made a presentation (or similar offering of services) within a period of 60 days preceding the date of the termination of my employment."

19. The Agreement defines "Straumann's Business" as the present of planned business, services or products of Straumann or any of its Affiliates.

20. MacLeod agreed and acknowledged that "the running of the period of restriction set forth in paragraph 5, above, shall be told (i.e. shall not run) during any time frame in which I am in violation of the provisions of the Agreement." *See* Exh. A, ¶ 8.

21. MacLeod agreed and understood that because remedies at law for violations of the Agreement would be inadequate, Straumann will be entitled to temporary and permanent injunctive relief in the event of a violation.  *See* Exh. A, ¶ 8.

22. The Agreement also entitles Straumann to recover from MacLeod all its reasonable attorneys' fees and expenses incurred in enforcing or obtaining MacLeod's compliance with the Agreement.  *See* Exh. A, ¶ 8.

23. Relying on MacLeod's agreement in this regard, Straumann provided MacLeod access to Straumann's Proprietary Information (as defined in the Agreement), including customer, pricing, and competitive intelligence information.

24. During her employment with Straumann, MacLeod utilized the training, knowledge and skills she received from Straumann, as well as her access to Straumann's confidential business plans, strategies, and back office support to cultivate, develop and maintain relationships with Straumann's customers and business partners for the purpose of advancing Straumann's business objectives.

25. During her employment with Straumann, MacLeod was exposed to Proprietary Information belonging to Straumann, including, without limitation, Straumann's trade secrets, marketing techniques and strategies, client lists and contact information, business partner lists and contact information, relationships and goodwill, all of which is the sole property of Straumann.

26. At all material times, Straumann has taken, and continues to take, reasonable efforts to maintain the confidentiality of its trade secrets and other confidential commercial information.

27. MacLeod voluntarily resigned from Straumann on or about January 12, 2021.

### MacLeod's Breaches

28. Immediately after MacLeod's last day at Straumann, she commenced employment with Align, in the same geographic area for which she was responsible and in which she provided services for Straumann.

29. Align is directly competitive with Straumann with respect to several products, including intraoral scanners.

30. As soon as she commenced employment with Align, on behalf of Align, MacLeod contacted customers of Straumann upon whom she called or solicited while employed by Straumann.

31. MacLeod contacted such Straumann customers on behalf of Align for purposes competitive with Straumann's Business, as defined in the Agreement.

### CLAIMS
### COUNT I
### Breach of Contract

32. Straumann realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

33. MacLeod entered into the Agreement with Straumann in exchange for good and

valuable consideration.

34. Straumann has fully performed its obligations under the Agreement.

35. MacLeod has breached and will likely continue to breach Paragraphs 5(a) and 5(b) of the Agreement.

36. Straumann has and/or will continue to suffer significant monetary damages as a consequence of MacLeod's breaches.

37. Straumann seeks preliminary and/or permanent injunctive relief to enjoin and restrain MacLeod from engaging in any further conduct that constitutes a breach of the Agreement. Unless such conduct is enjoined, it will cause great and irreparable injury to Straumann's business, harming the relationships between Straumann and its customers and business partners.

38. In addition to the injunctive relief to which Straumann is entitled, MacLeod's breaches entitle Straumann to recover damages suffered, and to an award of reasonable attorneys' fees and expenses incurred by bringing this action.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Straumann respectfully requests that the Court grant the following relief:

1. Enter judgment for Straumann;

2. Enter a preliminary and/or permanent injunction enjoining MacLeod from breaching the Agreement, until the expiration of the extended restrictive period;

3. Award Straumann damages in an amount to be determined a trial;

4. Award Straumann expenses, reasonable attorneys' fees and interest;  and

5. Award Straumann such other and further relief as the Court deems just and proper.

Respectfully submitted,

STRAUMANN USA, LLC

By its attorneys,

/s/ *Erik J. Winton*
Erik J. Winton, BBO #600743
wintone@jacksonlewis.com
Benjamin R. Davis, BBO#673017
benjamin.davis@jacksonlewis.com
Jeffrey S. McAllister BBO#676301
jeffrey.mcallister@jacksonlewis.com
JACKSON LEWIS, PC
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: January 27, 2021

## VERIFICATION

I, Shane Treadaway, Regional Sales Director, Southeast for Plaintiff, verify that I have read the foregoing Verified Complaint and that the facts stated therein are true to the best of my knowledge and belief based upon facts and information available to me, and I believe them to be true.

*/s/ Shane Treadaway*
Shane Treadaway